Case 16-24013-GLT    Doc 187    Filed 03/29/19    Entered 03/29/19 12:41:18    Desc Main
Document    Page 1 of 14

FILED
3/29/19 9:24 am
CLERK
U.S. BANKRUPTCY
COURT - WDPA

# IN THE UNITED STATES BANKRUPTCY COURT
## FOR THE WESTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| In re: | : | Case No. 16-24013-GLT |
| | : | Chapter 13 |
| **ROBERTA SCOTT SIMPSON**, | : | |
| *Debtor.* | : | |
| | : | |
| **ROBERTA SCOTT SIMPSON**, | : | |
| *Movant*, | : | Related to Dkt. Nos. 154, 164, 172, 174, |
| | : | 180, 181 |
| v. | : | |
| **WELLS FARGO BANK, N.A.**, | : | |
| *Respondent.* | : | |

Roberta Scott Simpson
Verona, PA
*Pro se*

Jodi L. Hause, Esq.
Phelan Hallinan Diamond & Jones, LLP
Pittsburgh, PA
Attorney for the Respondent

## **MEMORANDUM OPINION**

Facing the impending foreclosure of her primary residence by Wells Fargo Bank, N.A., Roberta Scott Simpson (the Debtor") commenced the present chapter 13 case to prevent the sale of her home. Unable to reach a consensual resolution with Wells Fargo, she now objects to its claim, asserting a litany of challenges ranging from the calculation of the outstanding

obligation to Wells Fargo's standing to enforce it.[1]  Wells Fargo opposes her objection.[2]  For the reasons set forth below, the Court will overrule the Objection.

I. **BACKGROUND**

The Debtor resides at real property located at 8001 Thon Drive in Verona, Pennsylvania (the "Property").  Her father, Willie G. Celler, purchased the Property in April 1991.  To finance the transaction, Celler obtained a loan guaranteed by the United States Veterans Administration from Equibank in the amount of $44,550.00 and granted a mortgage on the Property to secure the obligation.  The Mortgage Note requires monthly installment payments of principal and interest in the amount of $358.46 commencing on June 1, 1991 and continuing until May 1, 2021.[3]  The Mortgage also imposes an obligation to make a concurrent monthly payment for real estate taxes and insurance.[4]  The Debtor acquired sole title from Celler in August 2008, and he passed away in May 2009.

On May 26, 2015, Wells Fargo, as the holder of the Note and Mortgage by assignment, commenced a foreclosure action with respect to the Property.  On October 3, 2016, the Court of Common Pleas for Allegheny County, Pennsylvania (the "State Court") entered a default *in rem* judgment for failure to answer and an assessment of damages against the Debtor in the amount of $29,202.61 (the "Foreclosure Judgment").[5]  Wells Fargo obtained a Writ of Execution and the Property was scheduled for a Sheriff's sale to be held in December 2016.

---

[1] *Debtor's Objection to Proof of Claims and Notice of Mortgage Payment Change by Wells Fargo Bank, NA* (the "Objection"), Dkt. No. 154.

[2] *Response to Debtor's Objection to Proof of Claim and Notice of Mortgage Payment Change by Wells Fargo Bank, N.A.*, Dkt. No. 164.

[3] Claim 3-1, Part 2, at 12.

[4] Claim 3-1, Part 2, at 15, ¶ 2(a).

[5] Ex. C, Docket No. 164-4; Ex. E, Dkt. No. 164-5.

Thereafter, the Debtor filed several motions in the State Court seeking to vacate the Foreclosure Judgment and continue the Sheriff's sale.[6] In her motions, she alleged that Wells Fargo had not informed her of the default, established its right to payment or security interest, or otherwise complied with state and federal law.[7] On October 28, 2016, the State Court entered an order denying the motion to vacate the Foreclosure Judgment, but nonetheless continuing the Sheriff's sale to February 2017.[8] The Debtor appealed, but the appeal was dismissed and her subsequent attempt to reinstate it was denied.[9]

On the same day the State Court denied the motion to vacate the Foreclosure Judgment, the Debtor commenced the present chapter 13 case. Her initial chapter 13 plan was dependent on obtaining a loan modification from Wells Fargo.[10] The current amended plan provides for thirty-six monthly payments of $600, $358.46 of which will be paid to Wells Fargo on account of Simpson's continuing monthly mortgage obligations.[11] She further proposes to cure a prepetition arrearage owed to Wells Fargo in the amount of $5,000 over the life of the plan.[12]

In contrast, Wells Fargo timely filed a proof of claim asserting a secured claim totaling $39,571.84, with prepetition arrears in the amount of $24,146.66.[13] The proof of claim was accompanied by Official Form 410A setting forth a loan payment history from the first date

---

[6]   Ex. E, Dkt. No. 164-5; Ex. G, Dkt. No. 164-7.

[7]   Ex. G, Dkt. No. 164-7.

[8]   Ex. H, Dkt. No. 164-8.

[9]   Ex. I, Dkt. No. 164-9; Ex. J, Dkt. No. 164-10; Ex. K, Dkt. No. 164-11; Ex. L, Dkt. No. 164-12.

[10]  *Chapter 13 Plan*, Dkt. No. 21.

[11]  *Amended Chapter 13 Plan*, Dkt. No. 43.

[12]  Id.

[13]  Claim No. 3-1.

3

of default in July 2006.[14]  Also attached was the Note and Mortgage, supporting assignments, and an escrow analysis.[15]  Wells Fargo has since objected to the plan on the basis that it fails to cure the loan delinquency and is underfunded.[16]

The Debtor pursued loss mitigation, but it was terminated by the Court after she failed to comply with all the procedures in earnest.  By the Spring of 2017, she adopted a new tack and instead sought approval to "satisfy" Wells Fargo's claim with a payment of $15,425.18, representing what she alleged to be the outstanding principal balance of the loan.[17]  Wells Fargo objected, characterizing the attempt as "cram down" without a basis in fact or law.[18]  It later supplemented its response by filing a status report indicating that the total indebtedness as of July 20, 2018 had risen to $42,052.02, with a payment of $29,672.66 required to reinstate the mortgage.[19]  That same month, Wells Fargo also filed a Notice of Mortgage Payment Change reflecting a new payment of $590.36, including an escrow payment of $231.90.  After two hearings, it became apparent that the Debtor disputed the figures provided, causing her to withdraw the motion to satisfy and file the Objection.

---

[14]   Claim No. 3-1 at 4-22.

[15]   Claim No. 3-1, Part 2.

[16]   *Objection of Wells Fargo Bank, N.A. to Confirmation of the Debtor's Amended Chapter 13 Plan*, Dkt. No. 57.

[17]   *Debtor's Motion for Court Approval to Satisfy Wells Fargo Claim*, Dkt. No. 117.

[18]   *Response of Wells Fargo Bank, N.A. to Debtor's Motion for Court Approval to Satisfy Wells Fargo Claim*, Dkt. No. 120; see also *Trustee's Response to Debtor's Motion for Court Approval to Satisfy Wells Fargo Claim*, Dkt. No. 119 (noting that the relief sought by the Debtor was inconsistent with the proof of claim and procedurally improper).

[19]   *Payoff Statement and Reinstatement Figures filed in Compliance with Order of June 21, 2018*, Dkt. No. 125.

The Objection is expansive, though not particularly detailed.[20] To start, the Debtor urged the Court to find that Wells Fargo is not the holder of the Note and Mortgage, pointing to an alleged break in the chain in title between 1992 and 2000.[21] Without support, she argued that "all . . . loan payments have been timely made," but "at some point" Wells Fargo refused to accept any further payments without notice or explanation.[22] The Debtor complained that Wells Fargo has taken inconsistent positions regarding the amount due, compounded by its alleged failure to provide her a full loan history.[23] She asserted that the claim is incorrectly calculated, contending that payments have been improperly applied, and unlawful fees and interest have been charged.[24] Without elaboration, she further stated that Wells Fargo is barred by a class action settlement from charging inspection fees, appraisal fees, and late fees. The Debtor additionally protested that her monthly payments inexplicably jumped from $354.86 to more than $800.00, but her assertion that the Mortgage does not provide for taxes, insurance, or escrow payments suggests that she does in fact understand why the payment increased even if she does not agree with it. In any event, the Debtor maintained that she has paid all local taxes and insurance premiums. Generally citing Title 38 of the Federal Code and its corresponding regulations, the Debtor insisted that Wells Fargo has not complied with the servicing requirements of a Veterans Administration guaranteed home loan. Finally, she challenged the validity of the foreclosure judgment for various reasons.

---

[20] From the outset, the Court notes that the Debtor also raised some technical objections regarding the completion of the proof of claim form which, even if true, would not result in the disallowance of the claim. As such, the Court will not discuss them further.

[21] See Exs. E-G, Dkt. No. 154 (assignments).

[22] *Objection*, Dkt. No. 154 at 6.

[23] Exs. B and D, Dkt. No. 154.

[24] The only alleged misapplication specifically identified is $103.20, representing a uncashed check made payable to Celler, that Wells Fargo apparently transferred to the Pennsylvania Treasury in accordance with the unclaimed property law. See Exs. A and C, Dkt. No. 154.

Wells Fargo filed a response asserting that most of the Debtor's objections were barred by the *Rooker-Feldman* doctrine, *res judicata*, and collateral estoppel. Specifically, it argued that the Foreclosure Judgment, which it attached along with the state court docket and pleadings, represented a final adjudication of its standing to foreclose, the validity of its lien, and the amount of its claim as of the date of entry that cannot be undone by this Court. To the extent that the Debtor objected to any amounts that accrued since the entry of the Foreclosure Judgment, Wells Fargo affirmed the accuracy of its records and observed that she had failed to provide any proof of payment. Moreover, it urged that the *prima facie* validity of its claim could not be overcome by general assertions of errors or lack of compliance with various laws.

After a preliminary hearing on the Objection, it became apparent that both additional evidence and a narrowing of the issues would be necessary to resolve the dispute. Mindful that the Debtor was *pro se*, and in hopes of facilitating a consensual resolution, the Court ordered Wells Fargo to file: (1) a loan history beginning as of October 3, 2016 and continuing through the present, showing the accrual of interest and any other charges; (2) supplemental documents showing the accrual of real estate taxes on the Property between 2015 and 2018, and any evidence of payment by Wells Fargo; and (3) documentation concerning the hazard insurance policies on the Property since October 2016.[25] The Court also ordered the Debtor to file any evidence that she paid real estate taxes and/or hazard insurance for the same period, as well as a line-by-line objection to the documentation provided by Wells Fargo.[26] Finally, the Court directed the chapter 13 trustee to provide a history of all plan payments received from the Debtor, and identify all distributions to Wells Fargo.[27]

---

[25] Order dated November 15, 2018, Dkt. No. 168.

[26] Id.

[27] Id.

6

In compliance with the Court's order, Wells Fargo filed supplemental responses reflecting the amounts it paid on account of real estate taxes for the Property and force-placed hazard insurance, supported by copies of the checks evidencing such disbursements.[28] The chapter 13 trustee filed a report indicating, among other things, that the Debtor is current under her plan, but that it is substantially underfunded, particularly in light of the secured and priority claims filed by the Internal Revenue Service and Pennsylvania Department of Revenue.[29] The Trustee estimated that a sixty-month plan term with payments of $3,082.00 beginning in December 2018 would be necessary to confirm the plan.[30] The Debtor did not file anything by the deadline set by the Court.

The Court conducted a final hearing on the Objection in December 2018. During the hearing, the Debtor handed up a supplemental response with three exhibits, insisting that it had previously been sent to the Court and Wells Fargo by express mail.[31] Notably, the response does not contain a line-by-line objection to any of Wells Fargo's submissions, nor any amplification of the Objection. Exhibit A consists of an account statement from JP Morgan Chase Bank, N.A. dated June 30, 2018 through July 31, 2018, and an email chain with Attorney Jennifer Cerce regarding delinquent taxes.[32] The Court observes that the account statement does not clearly evidence a disbursement made for taxes. Moreover, the Court notes that the Attorney Cerce referenced in the email chain filed Claim No. 6 on behalf of the Penn Hills School District

---

[28]  *Response of Wells Fargo Bank, N.A. Filed in Compliance with Order Dated November 15, 2018*, Dkt. No. 174 at Ex. A (loan history), Exs. B-E (real estate tax payments); *Supplement to Response of Wells Fargo Bank, N.A. Filed in Compliance with Order Dated November 15, 2018*, Dkt. 180 at Ex. G (insurance payments).

[29]  Trustee's Report to the Court, Dkt. No. 172.

[30]  Id.

[31]  Debtor's Supplemental Response, Dkt. No. 181.

[32]  Id. at Ex. A.

for delinquent earned income taxes, which it later withdrew in August 2018.[33] Exhibit B is a series of insurance policy declarations suggesting that the Debtor has maintained homeowner's insurance on the Property from April 2016 through the present, although Wells Fargo does not appear as a mortgagee on the 2017-2018 policy declaration.[34] The Debtor did not, however, include evidence demonstrating that she actually paid the requisite premiums.[35] Exhibit C is merely a stack of printed federal regulations with which she asserts Wells Fargo did not comply.[36] After hearing from all parties, the Court took the matter under advisement.

## II.    JURISDICTION

This Court has authority to exercise jurisdiction over the subject matter and the parties pursuant to 28 U.S.C. §§ 157(a), 1334, and the Order of Reference entered by the United States District Court for the Western District of Pennsylvania on October 16, 1984. This is a core proceeding under 28 U.S.C. § 157(b)(2)(B).

## III.   DISCUSSION

Pursuant to section 502(a) of the Bankruptcy Code,[37] a proof of claim "is deemed allowed, unless a party in interest . . . objects."[38] The Federal Rules of Bankruptcy Procedure

---

[33] See Claim No. 6-1; *Withdrawal of Claim 6*, Dkt. No. 149.

[34] *Debtor's Supplemental Response*, Dkt. No. 181 at Ex. B

[35] At best, the Debtor provided a single email from her insurer dated June 4, 2018, indicating that they received they received two ACH payments totaling $405.20 on July 31, 2017 and February 19, 2018. In any event, the Court notes that Wells Fargo is not listed as a mortgagee on the 2017-2018 policy declaration.

[36] Id. at Ex. C.

[37] Unless expressly stated otherwise, all references to "Bankruptcy Code" or to specific sections shall be to the Bankruptcy Reform Act of 1978, as amended by the Bankruptcy Abuse Prevention and Consumer Protection Act of 2005 ("BAPCPA"), Pub. L. No. 109-8, 119 Stat. 23, 11 U.S.C. § 101, et seq. All references to "Bankruptcy Rule" shall be to the Federal Rules of Bankruptcy Procedure.

further provide that "[a] proof of claim executed and filed in accordance with these rules shall constitute *prima facie* evidence of the validity and amount of the claim."[39]  "In other words, a claim that alleges facts sufficient to support a legal liability to the claimant satisfies the claimant's initial obligation to go forward."[40]  Thereafter, "the burden shifts to the objector to produce sufficient evidence to negate the *prima facie* validity of the filed claim."[41]  The objector "must produce evidence equal in force to the *prima facie* case" that "would refute at least one of the allegations that is essential to claim's legal sufficiency."[42]  If successful, "the burden reverts to the claimant to prove the validity of the claim by a preponderance of the evidence."[43]

In the present case, Wells Fargo filed a timely proof of claim asserting a secured claim in the amount of $39,571.84, accompanied by Official Form 410A setting forth a loan payment history since the initial default, the Note and Mortgage, supporting assignments, and an escrow analysis.  Moreover, throughout the course of these proceedings, Wells Fargo further supplemented its proof of claim with the Foreclosure Judgment, state court docket and pleadings, additional payoff and reinstatement figures, evidence of real estate tax payments, and evidence of payments for force-placed insurance.  Clearly, Wells Fargo has alleged sufficient facts in support of its claim to entitle it to an initial presumption of validity.  Thus, the burden going forward rests on the Debtor to produce evidence refuting those allegations.

---

[38]    11 U.S.C. § 502(a).

[39]    Fed. R. Bankr. P. 3001(f).

[40]    In re Allegheny Int'l,, Inc., 954 F.2d 167, 173 (3d Cir. 1992).

[41]    Payne v. Lampe (In re Lampe), 665 F.3d 506, 514 (3d Cir. 2011).

[42]    In re Allegheny Int'l,, Inc., 954 F.2d at 173-74.

[43]    Id. at 174.

Before considering the Debtor's showing, the Court must assess the impact of the Foreclosure Judgment. First, it is well-established that under the *Rooker-Feldman* doctrine[44] "a losing state-court party is 'barred from seeking what in substance would be appellate review of the state judgment in a United States district court, based on [a] claim that the state judgment itself violates the loser's federal rights.'"[45] The Supreme Court of the United States has explained that the *Rooker-Feldman* doctrine is to be narrowly applied.[46] Accordingly, the United States Court of Appeals for the Third Circuit instructs that four requirements must be satisfied for the doctrine to apply:

> (1) the federal plaintiff lost in state court; (2) the plaintiff "complain[s] of injuries caused by [the] state-court judgments"; (3) those judgments were rendered before the federal suit was filed; and (4) the plaintiff is inviting the district court to review and reject the state judgments.[47]

The Third Circuit further emphasized that the "second and fourth requirements are the key to determining whether a federal suit presents an independent, non-barred claim."[48]

That said, the *Rooker-Feldman* doctrine is but one consideration arising from the Foreclosure Judgment. Even where the subsequent federal actions are not "essentially appeals from state-court judgments,"[49] "[d]isposition of the federal action, once the state-court adjudication is complete, would be governed by preclusion law."[50] Under the full faith and credit statute, 28 U.S.C. § 1738, "state court decisions [must] be given the same preclusive effect

---

[44] The doctrine takes its name from the only two cases in which the Supreme Court has applied it to defeat federal subject-matter jurisdiction: Rooker v. Fidelity Trust Co., 263 U.S. 413 (1923), and District of Columbia Court of Appeals v. Feldman, 460 U.S. 462 (1983).

[45] Gray v. Martinez, 465 F. App'x 86, 88 (3d Cir. 2012) (quoting Johnson v. De Grandy, 512 U.S. 997, 1005–06 (1994)).

[46] Exxon Mobil Corp. v. Saudi Basic Indus. Corp., 544 U.S. 280, 284 (2005).

[47] Great W. Mining & Mineral Co. v. Fox Rothschild LLP, 615 F.3d 159, 166 (quoting Id.).

[48] Id.

[49] Id. at 165.

[50] Exxon Mobil Corp. v. Saudi Basic Indus. Corp., 544 U.S. at 293.

in federal court they would be given in the courts of the rendering state."[51] As the Foreclosure Judgment was entered by a Pennsylvania Court, its preclusive effect is governed by Pennsylvania law.

There are two relevant preclusion principles under Pennsylvania law. First, *res judicata*, or claim preclusion, bars litigation against the same adversary based on the same cause of action.[52] It applies where the two suits share the following four elements: "(1) identity of issues; (2) identity in the cause of action; (3) identity of persons and parties to the action; and (4) identity of the capacity of the parties suing or being sued."[53] Second, collateral estoppel, also known as issue preclusion, "prevents a question of law or an issue of fact from being relitigated."[54] Collateral estoppel applies if:

> (1) the issue decided in the prior case is identical to the one presented in the later action; (2) there was a final adjudication on the merits; (3) the party against whom the plea is asserted was a party or in privity with a party in the prior case; (4) the party or person privy to the party against whom the doctrine is asserted had a full and fair opportunity to litigate the issue in the prior proceeding; and (5) the determination in the prior proceeding was essential to the judgment.[55]

Notably, collateral estoppel will not apply to a default judgment under Pennsylvania law because it fails to satisfy the "actually litigated" requirement, but *res judicata* will nonetheless apply.[56]

With all that in mind, the Court finds that the Foreclosure Judgment is conclusive of most of the issues raised in the Objection. Obviously, it arose from a proceeding involving

---

[51] Delaware River Port Authority v. Fraternal Order of Police, 290 F.3d 567, 573 (3d Cir. 2002).

[52] Duhaney v. Attorney Gen. of U.S., 621 F.3d 340, 347 (3d Cir. 2010)

[53] Daley v. A.W. Chesterton, Inc., 614 Pa. 335, 37 A.3d 1175, 1189–90 (2012).

[54] Aiello v. Aiello (In re Aiello), 533 B.R. 489, 493 (Bankr. W.D. Pa. 2015), *aff'd sub nom.* Aiello v. Aiello, 550 B.R. 83 (W.D. Pa. 2016), *aff'd sub nom.* In re Aiello, 660 F. App'x 179 (3d Cir. 2016).

[55] In re Estate of Plance, 175 A.3d 249, 270 (Pa. 2017) (quoting Taylor v. Extendicare Health Facilities, Inc., 637 Pa. 163, 147 A.3d 490, 511 n.30 (2016) and Office of Disciplinary Counsel v. Kiesewetter, 585 Pa. 477, 483, 889 A.2d 47, 50-51 (2005)); see LaMacchia v. Tarbell (In re Tarbell), 440 B.R. 668, 672 (Bankr. W.D. Pa. 2010).

[56] McGill v. Southwark Realty Co., 828 A.2d 430, 435 (Pa. Commw. Ct. 2003).

the same parties, entered prepetition, and represents a loss for the Debtor. Therefore, to the extent that she challenges validity of the Foreclosure Judgment, this Court lacks subject matter jurisdiction under the *Rooker-Feldman* doctrine. The Court further concludes collateral estoppel bars the relitigation of matters necessarily subsumed within the Foreclosure Judgment. Although the Foreclosure Judgment was originally entered in default, the Debtor had a full and fair opportunity to argue its merits through her motion to vacate and unsuccessful appeal. For this reason, the Court finds that Foreclosure Judgment, when viewed in conjunction with the order denying her motion to vacate and the dismissal of her appeal, satisfies the "actually litigated" requirement.[57] As a result, the Foreclosure Judgment implicitly establishes that Wells Fargo had standing and was the proper party to obtain such a judgment, precluding the Debtor from advancing an argument to the contrary before this Court. Furthermore, to the extent that the Foreclosure Judgment included an assessment of damages as of October 3, 2016, the Debtor cannot now dispute that figure or protest the components of its calculation.

In light of these findings, the Objection is essentially limited to post-petition matters. Ultimately, this only leaves calculation of the claim from the Foreclosure Judgment to present, including any charges for real estate taxes and force-placed insurance. Despite numerous opportunities, the Debtor's showing with respect to these issues has been minimal. As previously noted, she did not file a line-by-line objection to the documents provided by Wells Fargo as directed, and her generalized objections are inadequate to overcome the *prima facie* validity of the claim. The Debtor's assertion that certain fees and charges are barred by a class action settlement is without substantiation. Similarly, her contention that Wells Fargo has not complied with state and federal laws lacks specificity in citing to both conduct and law.

---

[57] See Rushmore Loan Mgmt. Servs., LLC v. Kohar (In re Kohar), 525 B.R. 248, 252 (Bankr. W.D. Pa. 2015).

By the Court's reckoning, the Debtor has only articulated three specific objections to the calculation of the post-Foreclosure Judgment claim. First, she argues that neither the Note nor the Mortgage provide for taxes, insurance, or escrow payments, meaning her monthly mortgage payment should be only $358.46. This is factually inaccurate as ¶ 2(a) of the Mortgage expressly imposes such obligations.[58] Second, the Debtor contends that she has paid all real estate taxes as evidenced by the bank account statement and the email exchanges with Attorney Cerce. Again, the Court must disagree as Attorney Cerce filed (and withdrew) a proof of claim on behalf of the Penn Hills School District for delinquent *earned income* taxes, so these documents do not relate to, let alone demonstrate the payment of, *real estate* taxes. Finally, the Debtor asserts that she has maintained appropriate hazard insurance on the Property, submitting insurance policy declarations covering April 2016 to the present as well as documents which suggest payments in July 2017 and February 2018. Although the insurance policy declarations *may* suggest that the Property was adequately insured, she has not clearly established that fact by providing proof that the premiums were paid. Absent proof of payment, the Court cannot find that the policies were in effect. The Court also cannot credit her for the two payments she has proven because the policy declarations do not list Wells Fargo as the mortgagee.[59]

For all these reasons, the Objection is without merit. In so finding, the Court notes that this outcome follows numerous hearings regarding the Debtor's assertions about Wells Fargo and its claim. In recognition that it is a debtor's burden to rebut a proof of claim's *prima facie* validity, the Court afforded her multiple opportunities over the course of months to bolster her general contentions by presenting specific supported objections. In the end, however, the

---

[58]    Claim 3-1, Part 2, at 15, ¶ 2(a).

[59]    *See* Claim 3-1, Part 2, at 15, ¶ 6.

Debtor's allegations and submissions simply never rose to a level that met the relevant legal standards.

## IV.     CONCLUSION

In light of the foregoing, the Objection is overruled.  This opinion constitutes the Court's findings of fact and conclusions of law in accordance with Fed. R. Bankr. P. 7052.  The Court will issue a separate order consistent with this opinion.

ENTERED at Pittsburgh, Pennsylvania.

_____
GREGORY L. TADDONIO cgt
UNITED STATES BANKRUPTCY JUDGE

Dated: March 29, 2019

Case administrator to mail to:
Debtor
Jodi L. Hause, Esq.
Ronda J. Winnecour, Esq.
Office of the U.S. Trustee

Vanessa Smith
P.O. Box 7661
Chicago, IL  06080